UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

R.H. MANDEVILLE,          )
     Petitioner,          )
                          )
          v.              )     C.A. No. 05-11969-MLW
                          )
MICHAEL A. THOMPSON,      )
Superintendent,           )
     Respondent.          )

<u>MEMORANDUM AND ORDER</u>

WOLF, D.J.                                    March 31, 2014

I.   INTRODUCTION

     On September 22, 2005, petitioner Rae Herman Mandeville
("Mandeville"), proceeding <u>pro</u> <u>se</u>, initiated this habeas corpus
proceeding pursuant to 28 U.S.C. §2254.  Mandeville asserts three
grounds for relief: (1) that the trial court's charge to the jury
was an improper "call to arms"; (2) that he was denied counsel to
present his claims to the Supreme Judicial Court of Massachusetts
(the "SJC"); and (3) that he expects respondent's counsel will seek
to confuse the court, though he recognizes that this claim is
"wa[i]ved" if respondent's counsel does not act in such a manner.

     This case was originally assigned to Judge Nancy Gertner, who
stayed the case in 2006 to allow Mandeville to exhaust his claims
in state court.  Following Judge Gertner's retirement, the case was
transferred to this court in 2012.  Mandeville now seeks to reopen
this case and have his claims resolved on the merits.  The
respondent agrees with this request.  The court is, therefore,
reopening this case.

However, because at least one of Mandeville's claims remains unexhausted despite his having numerous opportunities to present it in state court, the petition is being dismissed as required by Rhines v. Weber, 544 U.S. 269, 273 (2005).

## II. PROCEDURAL HISTORY

### A. Conviction and Direct Appeal

On June 15, 1977, following a jury trial in Suffolk County Superior Court before Justice James P. McGuire, Mandeville was found guilty of murder in the first degree and armed assault with intent to murder. Mandeville was subsequently sentenced to a term of life imprisonment for murder and a concurrent term of eighteen to twenty years in prison for armed assault.

The SJC, in its opinion affirming the trial court judgments, summarized the trial proceedings:

> The evidence at trial tended to show that at approximately 10:30 P.M., on February 14, 1976, the defendant entered the apartment of his girl friend, Emily Kincaid, found her in bed with another woman, and shot them both. Emily was killed, and the other woman, Donna Lucas, was seriously wounded. Donna Lucas testified at trial but could only give a general description of the assailant, who was apparently masked, and could not identify the defendant. Among the witnesses for the Commonwealth was Charles St. Jean, a neighbor of the defendant. He testified that at 9 P.M., on February 14 the defendant came to St. Jean's apartment and asked to borrow St. Jean's .22 caliber derringer. The defendant took the gun and eight bullets, and before leaving fired one shot into the wall. The spent projectile recovered from the wall of St. Jean's apartment had markings that were similar to those found on the projectiles recovered from Emily Kincaid's body. St. Jean also testified that the following day the defendant came to his apartment

with the gun looking "white and really jumpy," and told him that "(h)e blew his girl friend away, and a guy that was with her in bed."  St. Jean then told the defendant to take the gun and the bullets and leave. The gun was never recovered.

Mr. Paul Conley, an attorney who was employed as a staff psychologist at the Dimock Community Health Center, and who was an acquaintance of the defendant, also testified for the Commonwealth.  Mr. Conley testified that on the afternoon of February 15, 1976 (the day after the murder), the defendant telephoned him at his home and said that he was thinking of committing suicide by taking an overdose of drugs.  When asked why he was planning to kill himself, the defendant indicated to Mr. Conley that he had found his girl friend in bed with another woman and that he had killed them both.  At Mr. Conley's suggestion, the defendant went that evening to Mr. Conley's home to talk.  There the defendant again told Mr. Conley that he had shot his girl friend and another woman, and said that the shooting had occurred on the previous evening at 10:15 P.M.  After they discussed the situation for several hours, the defendant returned to his apartment, and a few hours later he swallowed approximately seventy antihistamine pills.  The following morning the defendant again called Mr. Conley, and Mr. Conley arranged to have the defendant go to the Harvard Community Health Center.  From there he was transferred to Glenside Hospital for psychiatric treatment.  A mental health worker at the hospital, John Schafer, testified that during the defendant's stay at the hospital the defendant told him "he had killed his girl friend and her friend was a vegetable."  There was also testimony given by an emergency medical technician, Thomas Seeley, who accompanied the defendant to Glenside Hospital. Seeley testified that, when the defendant was asked why he was going to the hospital, he replied, "I am going to beat it," and that the defendant asked him whether if he "told a shrink that he had committed a crime, would the shrink in turn have to notify the police department."

The defendant took the stand and denied that he had shot Emily Kincaid or Donna Lucas.  He stated that on the evening of the murder, he went to a drugstore to look at magazines, took a walk, and went to bed.  The next morning he went to Emily Kincaid's apartment, saw the bodies of the two women, and left. He admitted to having a key to the apartment at the time.  He testified that he

3

then went to St. Jean's apartment in order to borrow a gun to kill someone; however, he left without the gun. The defendant admitted talking to St. Jean, Mr. Conley, the emergency medical technician, and the mental health worker, but he denied making the admissions that they attributed to him.

Commonwealth v. Mandeville, 436 N.E.2d 912, 915-16 (Mass. 1982) (footnote omitted).

On direct appeal to the SJC, Mandeville raised six separate claims:

(1) the exclusion of evidence which allegedly tended to implicate another person in the murder; (2) the exclusion of the defendant's proffered explanation of a statement elicited from him on cross-examination; (3) the admission in evidence of statements made by the defendant to the police following his arrest; (4) the reading to the deliberating jury of the stenographer's notes of the testimony of three prosecution witnesses; (5) the jury instructions on the elements of malice and intent; and (6) the admission of allegedly confidential communications between the defendant and a psychologist. In addition, the defendant ask[ed the SJC] to order a new trial or reduce the verdict pursuant to G.L. c. 278, §33E, on the grounds that there was improper argument by the prosecutor and that there was substantial evidence of the defendant's mental impairment.

Id. at 914-15. The SJC examined and rejected each of these claims, and affirmed Mandeville's conviction. See id. at 925. Mandeville does not challenge any part of this decision in his present petition.

B. Motions for a New Trial

Following the SJC's affirmance of his conviction on direct appeal, Mandeville filed motions for a new trial in the Suffolk County Superior Court on August 5, 1982 (denied October 19, 1982);

September 13, 1991 (denied November 21, 1991); January 15, 1993 (denied June 4, 1996); and December 19, 1995 (denied May 3, 1996).[1] <u>See</u> Super. Ct. Docket No. 1976-99597; Super. Ct. Docket No. 1976-99598; <u>see</u> <u>also</u> Resp't's Memo. in Supp. of Mot. to Dismiss at 3-5. Mandeville also filed numerous motions to amend those motions for a new trial. Mandeville did not appeal any of these denials to the SJC until November 29, 2001. <u>See</u> Docket, <u>Commonwealth v. Mandeville</u>, SJ-2001-0558 (Docket No. 54-1, at 11-12).

C.  <u>First Habeas Petition</u>

On December 8, 1995, Mandeville filed a petition for a writ of habeas corpus from this court, in a case captioned <u>Mandeville v. Dubois</u>, C.A. No. 95-12115-MLW. In that petition, Mandeville stated four grounds for relief, none of which are presented in the instant petition. Due to a procedural error, the respondent was not served until after the court issued an order on December 14, 1998, when the court ordered the respondent to filed documents concerning whether Mandeville had exhausted his available state remedies. <u>See</u> Dec. 14, 1998 Memo. & Order, <u>Mandeville v. Dubois</u>, C.A. No. 95-12115-MLW, ECF No. 9.

Mandeville conceded that he had not presented any of his

---

[1] Mandeville also claims to have filed additional motions for a new trial on February 1, 1993, and February 9, 1993, but as this court has previously found, there is no record of these motions on the state-court dockets. <u>See</u> May 2, 2000 Memo. & Order at 4, <u>Mandeville v. Dubois</u>, C.A. No. 95-12115-MLW, ECF No. 40.

claims to the SJC, but he argued that his petition fell within an exception to the exhaustion requirement because the state appeals courts had allegedly failed to review the Suffolk Superior Court's denials of his motions for a new trial, some of which did not appear on either the Superior Court of Appeals Court dockets. On May 2, 2000, the court issued a Memorandum and Order in which it dismissed Mandeville's petition without prejudice to his resubmitting the petition after exhaustion of state remedies. The court wrote that:

> Mandeville must promptly pursue his remedies under M.G.L. c. 211, §3 and seek orders or writs from the Supreme Judicial Court compelling the Massachusetts Appeals Court to act on his notice of appeal and, if appropriate, directing the Suffolk Superior Court to address the motions for a new trial Mandeville claims are pending.

May 2, 2000 Memo. & Order at 10, Mandeville v. Dubois, ECF No. 40.

The court subsequently issued a certificate of appealability on the grounds that "Mandeville has suffered substantial delay in having his appeals heard by the Massachusetts state courts, notwithstanding the fact that he has not yet sought the intervention of the Supreme Judicial Court pursuant to M.G.L. c. 211, § 3." Sept. 8, 2000 Memo. & Order at 7, Mandeville v. Dubois, ECF No. 46.

On September 25, 2000, Mandeville moved to reopen the case, arguing that he had filed a petition with the SJC, but that it had gone unanswered. Before the court could rule on the motion to reopen, the case was stayed pending the First Circuit's ruling on

appeal. See Feb. 19, 2001 Order, Mandeville v. Dubois, ECF No. 60.

On June 19, 2001, the First Circuit affirmed this court's dismissal of the petition, concluding that "[t]he record reveals that Mandeville has failed to complete one full round through the state courts with respect to any of [his] claims," and that "[u]nder the circumstances, we think that he is responsible for much of the delay." Mandeville v. Mahoney, No. 00-1736 (1st Cir. June 19, 2001).

On September 17, 2001, the court denied without prejudice Mandeville's motion to reopen the case. The court concluded that, based on the absence of any entry on the SJC's docket indicating that Mandeville had filed an appeal with the SJC, he had "failed to demonstrate that he has properly filed and served his appeal documents." See Sept. 17, 2001 Order at 7, Mandeville v. Dubois, ECF No. 64.

D.   Second Habeas Petition

Mandeville returned again to federal court on September 22, 2005, when he commenced the present habeas action by filing a motion for leave to proceed in forma pauperis and a motion to appoint counsel. On September 29, 2005, he filed his petition and identified three grounds for relief.

First, Mandeville argues that the trial judge gave the jury a "call to arms charge," in alleged violation of Cage v. Louisiana, 498 U.S. 39 (1990) and Commonwealth v. Pinckney, 644 N.E.2d 973

(Mass. 1995). Pet. ¶12(A). Mandeville claims that the "charge was actuall [sic] inbetween [sic] 'Call to arms[,]' however, Petitioner says it was enough to prejudice the jury into returning a guilty verdict." <u>Id.</u> Second, Mandeville argues that he was "denied counsel to prosecute an appeal to the high court," in violation of Articles XI and XII of the Massachusetts Declaration of Rights. <u>See</u> <u>id.</u> ¶12(B). Third, Mandeville argues that the prosecution had engaged in "artful pleading designed to confuse the courts," and that he expects the same from the respondent in this case. <u>Id.</u> ¶12(C). However, Mandeville states that "[g]round three will be currently waved [sic] by the Petitioner unless counsil [sic] for the Suffolk County District Attorney/Attorney General's [sic] begin" such artful pleading. <u>Id.</u> The petition did not indicate that these three grounds for relief had not been presented in other courts. <u>See</u> <u>id.</u> ¶13.

Judge Gertner, to whom the case was originally assigned, denied the petition to proceed in forma pauperis and ordered the respondent, identified as Michael A. Thompson, the Superintendent of M.C.I. Shirley, to file an answer or other responsive pleading to the habeas petition. <u>See</u> Oct. 6, 2005 Order at 2-3.

The respondent moved to dismiss Mandeville's petition. <u>See</u> Mot. to Dismiss. In support of the motion to dismiss, the respondent advanced two main arguments. First, the respondent argued that the petition was time barred under 28 U.S.C. §2244(d),

which imposes a one-year period of limitation on applications for a writ of habeas corpus. The respondent argued that this one-year period started on October 25, 1996, the effective deadline for Mandeville to file his notice of appeal from his December 19, 1995 Motion for a New Trial, which was decided on June 4, 1996. See Memo. in Supp. of Mot. to Dismiss at 10 (citing Mass. R. App. P. 4(b)-(c)). The respondent argued that the period of limitations had not been tolled and that, because the instant habeas petition had been filed in September 2005, the one-year period had long elapsed. See id. at 11.

Second, the respondent argued that the petition should be dismissed because Mandeville had failed to exhaust his state court remedies, as is required by 28 U.S.C. §2254(b)(1). Explaining that "a petitioner will not be found to have satisfied the exhaustion requirement unless each and every claim in his petition has been exhausted," id. at 13 (citing Rose v. Lundy, 455 U.S. 509, 510, 518-20 (1982)), the respondent said that neither of Mandeville's two substantive claims[2] had been presented in state court.

With respect to Mandeville's "call to arms" claim, the respondent acknowledged that Mandeville's November 29, 2001

---

[2] Because Mandeville had stated that his third ground for relief would be waived unless otherwise indicated, see Pet. ¶12(C), the respondent did not consider whether this argument had been presented in state court, see Memo. in Supp. of Mot. to Dismiss at 14 n.8.

gatekeeper petition to a single justice of the SJC[3] did cite <u>Cage</u>
and <u>Pinckney</u>, but argued that those cases had been offered in
support of an argument that "merely challenged the trial court's
instructions regarding the standards of proof required for
conviction and the definition of reasonable doubt" and did not
discuss a "call to arms" to any degree. <u>Id.</u> at 14. With respect
to Mandeville's second claim, the respondent asserted that although
Mandeville "did raise the issue of the court's failure to provide
him with appellate counsel in his Gatekeeper Petition," he failed
to advance any arguments under the federal constitution or
otherwise alert the state courts to any federal basis for that
claim. <u>Id.</u> at 16 (citing <u>Scarpa v. DuBois</u>, 38 F.3d 1, 6 (1st Cir.
1994)). The respondent also argued that, given the clear
availability of state collateral procedures, Mandeville's "failure
to exhaust was not excused by application of any statutory
alternative to exhaustion." <u>Id.</u>

In his response to the motion to dismiss, Mandeville alleged
that his legal actions have been impeded by "sabotage by the
courts." Pet.'s Resp. to Mot. to Dismiss at 2. With respect to
the period of limitations, Mandeville argued that the clock started
not in 1996, but with the denial of his SJC petition on February
10, 2005.

---

[3] At the time the instant habeas petition was first filed,
this was the only petition to the SJC that Mandeville had filed.

Mandeville also did not appear to grasp the function of the exhaustion requirement. Although his response is difficult to parse, it seems to imply a belief that the presentation of <u>any</u> claim in state court is sufficient for the exhaustion of <u>all</u> claims. <u>See</u> <u>id.</u> at 10 ("[T]o apply for federal relief, the Petitioner need only reach the 'Gatekeeper' and receive the 'Gatekeeper's' review/judgment."). Mandeville did not contend that the two unwaived claims in his petition had been presented in state court, and at times Mandeville seemed to regard such a showing as unnecessary. For example, he indicated that the respondent was advancing the exhaustion argument to distract the court from the merits of his claims, saying that the motion to dismiss "is a classic case of 'Artful Pleading' where the Respondent says the Petitioner did not present an issue. In fact and in reality, the Respondent failed to present an argument which show the jury was not influenced and effected [sic] by the ['call to arms' in the jury instructions]." <u>Id.</u> at 11. With respect to the exhaustion of his second claim, regarding his right to appellate counsel, Mandeville argued that "the Petitioner is 'Not' required in a state court to present a 'Federal' claim, especially to the SJC." <u>Id.</u> at 12.

On January 30, 2006, Judge Gertner denied respondent's motion to dismiss and stayed the case:

> The government quite properly challenges the petition on
> the grounds that it was not filed within the applicable

> statute of limitations and further, that petitioner has
> failed to exhaust his state remedies on certain of his
> claims.  I will defer consideration of the statute of
> limitations issues and any questions concerning whether
> those deadlines were equitably tolled because of the
> unusual history of this case.  Instead, I will STAY this
> action until the Petitioner has exhausted his state
> remedies.  Petitioner is to report on the status of his
> state claims on March 31, 2006.

Jan. 30, 2006 Elec. Order.  During the pendency of the stay,

Mandeville filed a status report regarding his state court claims

every ninety days after Judge Gertner's Order, missing only one

filing in 2011.  As indicated earlier, on July 9, 2012, following

Judge Gertner's retirement, the case was reassigned to this court.

        E.   The Motion to Reopen

    On September 18, 2012, Mandeville filed a Notice to Reopen

Petition for a Writ of Habeas Corpus (the "Motion to Reopen").

Mandeville seeks to reopen this habeas case and add additional

arguments, at least some of which he admits have not been addressed

by the state courts.  As grounds for the Notice to Reopen,

Mandeville states that on August 30, 2012, the SJC denied his

petition for leave to appeal the denial of his motion for a new

trial.  Mandeville maintains that the SJC's August 30, 2012 Order

shows that he has no further recourse in the state courts.

    On March 22, 2013, the court ordered Mandeville to file a

report stating whether the particular claims in his habeas petition

were presented to and/or decided by the state courts.  See Mar. 22,

2013 Order at 3.  The respondent was ordered to respond to

petitioner's Motion to Reopen, and address the issue of exhaustion.
See id. at 4.

In his response to the March 22, 2013 Order, Mandeville evinced a persistent misunderstanding of the exhaustion requirement and the rationale behind Judge Gertner's stay of the case:

> The dismissal of Feb. 2005 left the defendant to understand why a review of the Defendant's new issues were denied, and in essence, they were not reviewed. Only two were and they are in the U.S. Courts.

Pet.'s Resp. to Mar. 22, 2013 Order Ex. 1 at 9. Accordingly, Mandeville appears to believe that the stay was granted so that he could exhaust claims other than those presented in his original petition. The response also indicated that on October 4, 2012, Mandeville had filed yet another §33E petition, a copy of which he included. See id. Ex. 1. That petition discussed several other alleged trial errors, including faulty ballistics evidence and violation of the attorney-client privilege. Id. at 6-7. Mandeville's petition noted that "[h]aving some experience with the Federal Courts, the Defendant herein tried to anticipate what issue the U.S. Courts - may send the Defendant back to the SJC." Id. at 7. In essence, this §33E petition indicates that Mandeville was attempting to exhaust all of his other potential claims, not those raised in the instant habeas petition.

The respondent filed a motion for an extension of time to file a response to the March 22, 2013 Order, seeking additional time to investigate Mandeville's claim that he had filed an additional

petition for leave to appeal the denial of his motion for a new trial. Because the court finds that there was good cause for an extension of time for the respondent's filing, the respondent's motion is being allowed.

In his response to the March 22, 2013 Order, the respondent largely repeated the arguments he first advanced in 2006 in support of his motion to dismiss. First, the respondent argued that Mandeville's claims, as presented in his original habeas petition, remain unexhausted. The respondent noted that Mandeville's July 13, 2012 §33E petition "did not advance any claim resembling either of the two in his [habeas] Petition," Resp't's Resp. to Order of Mar. 22, 2013 at 3. The respondent also reported that Mandeville's October 4, 2012 §33E petition did not appear on the SJC docket "or any other state appellate court docket bearing the Petitioner's name." Id. at 4. Accordingly, the respondent urged the court to allow Mandeville's motion to reopen the petition and to dismiss the case. See id. at 6. Finally, the respondent reiterated his earlier argument that Mandeville's petition is time-barred. See id.

Mandeville then submitted a confusing reply to the respondent's filing, in which he argued that "[a]ny problems with papers not being marked or docketed . . . seem to be more on the pert [sic] of Court Personal [sic]." Pet'r's Resp. to Resp't's Resp. at 6. On August 14, 2013, Mandeville filed another motion to

reopen the case, devoting much of his motion to the discussion of legal arguments not addressed to issues raised in his habeas petition.  Aug. 14, 2013 Mot. to Reopen Case at 6-12.

III. DISCUSSION

    A.   <u>The Exhaustion Requirement</u>

    This court's review of the Mandeville's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 110 Stat. 1214 (1996), <u>codified at</u> 28 U.S.C. §2254.

    In circumscribing the scope of habeas relief, AEDPA provides that:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. §2254(a).  Accordingly, habeas review is available only for federal claims, and does not extend to alleged errors of state law.  <u>See</u> <u>Swarthout v. Cooke</u>, 131 S. Ct. 859, 861 (2011).

    AEDPA also provides that before a petitioner may challenge his custody under federal law, his federal claims must have been presented in state court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that —
>
>     (A)  the applicant has exhausted the remedies available in the courts of the State; or
>
>     (B) (i)   there is an absence of available State

15

corrective process; or

> (ii) circumstances exist that render such
> process ineffective to protect the rights
> of the applicant.

28 U.S.C. §2254(b)(1).  Furthermore, "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."  Id. §2254(c).

This exhaustion requirement gives state courts an opportunity to consider and correct alleged violations of its prisoner's federal rights.  See Picard v. Connor, 404 U.S. 270, 275 (1971). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  Baldwin v. Reese, 541 U.S. 27, 29 (2004).  A fairly presented claim will make it probable that a reasonable jurist would have been alerted to the existence of the federal question. See Nadworny v. Fair, 872 F.2d 1093, 1101 (1st Cir. 1989).  The burden of proving that a federal claim has been exhausted at the state court level is on the petitioner.  Id. at 1098.  This burden "is a heavy one."  Id.

"[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or

a brief (or a similar document) . . . in order to find material, such as a lower court opinion in the case, that does so." <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004). This general rule means that "an appealed issue cannot be considered as having been fairly presented to the SJC for exhaustion purpose unless the applicant has raised it within the four corners of [his petition to the state's highest court]." <u>Mele v. Fitchburg Dist. Ct.</u>, 850 F.2d 817, 823 (1st Cir. 1988).

The exhaustion requirement does not permit courts to excise unexhausted claims from habeas petitions in order to decide claims that have been exhausted. Instead, "federal district courts may not adjudicate mixed petitions for habeas corpus, that is petitions containing both exhausted and unexhausted claims. . . . [T]he interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." <u>Rhines</u>, 544 U.S. at 273 (citing <u>Rose</u>, 455 U.S. at 518-19). The Supreme Court has held that, in order to prevent a petitioner from forfeiting claims due to AEDPA's one-year period of limitations, district courts may grant a stay to permit the  petitioner to exhaust his remedies in state court. <u>See</u> <u>id.</u> at 275-76. However, "[e]ven where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA. A mixed petition should not be stayed indefinitely." <u>Id.</u> at 277. As the First Circuit has

explained the Supreme Court's decision in Rhines:

> "[S]tay and abeyance is only appropriate when the
> district court determines there was good cause for the
> petitioner's failure to exhaust" and even so, it would be
> an abuse of discretion for the district court to grant a
> stay when the "unexhausted claims are plainly meritless."

DeLong v. Dickhaut, 715 F.3d 382, 387 (1st Cir. 2013) (citing
Rhines, 544 U.S. at 277).

B.  Analysis

In this case, there are multiple theories on which
Mandeville's petition could be evaluated.  As AEDPA provides, "[a]n
application for a writ of habeas corpus may be denied on the
merits, notwithstanding the failure of the applicant to exhaust the
remedies available in the courts of the State."  Id. §2255(b)(2).
Moreover, as Judge Gertner recognized, the instant petition is
arguably time barred.  However, in prior stages of this litigation,
the parties and the court have focused primarily on the application
of the exhaustion requirement.  It is, therefore, appropriate to
begin, and end, with this requirement.

1.  Exhaustion of Petitioner's Claims

As the record reveals, Mandeville has not presented one of the
two remaining claims in his petition, framed as an alleged
violation of federal law, in state court.

In order to satisfy the exhaustion requirement, Mandeville
must show that he presented his arguments to the SJC, not simply to
lower state courts.  As the First Circuit has explained:

18

> Exhaustion obligations mandate that a habeas petitioner
> present, or do his best to present, his federal claim to
> the state's highest tribunal. Accordingly, the decisive
> pleading is the application for further appellate review,
> and we must determine whether the petitioner fairly
> presented the federal claim to the SJC within "the four
> corners" of that application.

Adelson v. DiPaola, 131 F.3d 259, 263 (1st Cir. 1997) (citations omitted). The state-court record reveals that Mandeville has filed only two petitions in the SJC, both of which were "Gatekeeper Petitions" under Massachusetts General Laws ch. 278 §33E.[4] Accordingly, if the claims raised in Mandeville's habeas petition do not appear "within the four corners" of those §33E petitions, they have not been exhausted.

Examining these petitions, the court finds that although Mandeville has arguably exhausted his "call to arms" claim, he has not exhausted his claim regarding the right to appellate counsel.

### a.   Ground One: "Call to Arms"

Mandeville's first gatekeeper petition was filed on November 29, 2001, and was denied on February 10, 2005. See Docket, Commonwealth v. Mandeville, SJ-2001-0558 (Docket No. 54-1, at 11-12). That petition consisted of a short cover memorandum, which summarized the procedural history as Mandeville characterized it,

---

[4] Section 33E provides that where a motion for a new trial is filed in the Superior Court after the SJC has issued its final decision on direct appeal, "no appeal shall lie from the decision of that court upon such motion unless the appeal is allowed by a single justice of the supreme judicial court on the ground that it presents a new and substantial question which ought to be determined by the full court." Mass. Gen. Laws ch. 278, §33E.

and attached copies of Mandeville's previous motions for a new trial. See Def.'s Pet. to the Single Justice (Resp't's App'x Ex. F, Docket No. 11). Rather than recapitulating the arguments he made in those motions, Mandeville's petition simply requested that "[t]he SJC hear and make determination[s] on his four (4) attached motion[s] for a new trial [and] over turn the Defendant['s] convictions and grant his new trial." Id. at 3.

One of the decisions Mandeville challenged in that petition was the denial of December 19, 1995 motion for a new trial, in which he argued that the trial judge's use of the phrase "moral certainty" had lowered the Commonwealth's burden of proof, in violation of Cage, 498 U.S. 39, and Pinckney, 644 N.E.2d 973. See Def.'s Pet. to the Single Justice Ex. F.

Justice Francis X. Spina, serving as the §33E gatekeeper, denied the petition, concluding that it did not present a "new and substantial question" that would entitle Mandeville to appeal before the full SJC. The only argument that Justice Spina examined in any depth was Mandeville's claim regarding the jury instructions. Justice Spina concluded that Mandeville had waived the argument by not presenting it earlier. See Memo. & Order at 3, Commonwealth v. Mandeville, No. SJ-2001-0558 (Mass. Feb. 10, 2005). Furthermore, Justice Spina concluded that "[e]ven if there were no waiver, the defendant would not be entitled to relief," primarily because the trial judge used the phrase "moral certainty" together

with other "language that emphasized the high degree of certainty required to convict the defendant." Id. at 4.

As explained earlier, Mandeville's first habeas claim is that the trial judge made a "call to arms" to the jury in violation of Cage, 498 U.S. 39, and Pinckney, 644 N.E.2d 973. Pet. ¶12(A). Again, Mandeville cited these cases in his §33E petition in support his argument that the trial judge had lowered the burden of proof necessary for a conviction, and Justice Spina also cited those cases in his denial of Mandeville's petition.

In his habeas petition and other submissions, Mandeville has not clearly articulated his view of the "call to arms." A review of federal court decisions reveals that this phrase has no significance in the jurisprudence surrounding jury instructions. However, Mandeville's own description of his §33E petition sheds some light on what he believes the "call to arms" argument to be. In his habeas petition, Mandeville is explicit that his 2001 §33E petition raised the issue of whether "[t]he instructions to the jury were in essence in between the 'Call to arms' Comm V Pickeny [sic], 419 Mass. 341, and other cases such as Cage V Louisianna [sic], 498 U.S. 39 and others." Pet. ¶9(e)(4). Accordingly, the phrasing of the habeas petition implies that Mandeville believes the "call to arms" argument to be identical to his argument in state court that the trial judge impermissibly lowered the Commonwealth's burden of proof. Therefore, the court finds that

Mandeville's habeas claim was presented to the SJC in his 2001 §33E petition and is, therefore, exhausted for purposes of habeas review.

### b.  Ground Two: Right to Counsel

Mandeville's other remaining habeas claim is that "he was denied counsel to prosecute an appeal to the high court." Pet. ¶12(B).  The record reveals that Mandeville was represented by William J. Leahy, Esq., during his direct appeal.  See Def.'s Brief, Commonwealth v. Mandeville, Case No. SJC-01961 (Mass. 1981) (Resp't's Suppl. App'x Ex. A, Docket No. 16).  Accordingly, Mandeville is evidently referring to the denial of counsel for his collateral challenges to his conviction.  Although Mandeville's habeas petition cites only the Massachusetts Declaration of Rights, his other submissions to this court indicate that he also conceives of this right-to-counsel claim as arising under the federal constitution.  See Pet.'s Resp. to Resp't's Resp. to Mar. 22, 2013 Order at 6-7 (citing First, Fifth, Sixth, and Fourteenth Amendments); Pet.'s Second Mot. to Reopen at 4 (citing Fourteenth Amendment).

In his habeas petition, Mandeville claims that this claim was raised in a motion for appointment of counsel that accompanied his 2001 §33E petition.  See Pet. ¶11(b).  In that motion, Mandeville "move[d] the court to appoint legal repersentation [sic] to repersent [sic] the Defendant on his four (4) motions for a new

trial appeal." Def.'s Mot. for Appointment of Legal Counsel [sic] (State Court R. at 18, Docket No. 4). The SJC docket shows that this motion was denied without a hearing on May 2, 2002. <u>See</u> SJC Docket (Resp't's App'x Ex. C, Docket No. 11).

In support of this motion, Mandeville cited only Articles XI and XII of the Massachusetts Declaration of Rights, and did not articulate any arguments based on federal law. <u>See</u> Def.'s Mot. for Appointment of Legal Counsel. Although both the Massachusetts and federal constitutions recognize the right to counsel on direct appeal, the federal constitution does not provide "any right to counsel in state collateral proceedings after exhaustion of direct appellate review." <u>Coleman v. Thompson</u>, 501 U.S. 722, 756 (1991) (citing <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 556 (1987)). Accordingly, Mandeville did not present this claim "in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of a federal question." <u>Scarpa v. DuBois</u>, 38 F.3d 1, 6 (1st Cir. 1994). Rather, a reasonable jurist would have understood that no such federal right existed. Accordingly, Mandeville did not exhaust this claim in his 2001 §33E petition.

Nor did Mandeville exhaust this claim in any subsequent petition or motion to the SJC. The second gatekeeper petition, which came after the commencement of the stay in this case, was filed on July 13, 2012. <u>See</u> SJC Docket (Resp. to Mar. 22, 2013

Order App'x at 10, Docket No. 54-1).  That petition contains a variety of arguments, primarily related to ineffective assistance of counsel.  The petition does not contain any discussion of Mandeville's current claim regarding denial of access to counsel.

Mandeville, in his response to the March 22, 2013 Order, claims that he submitted a second §33E gatekeeper petition on October 4, 2012.  He also included a copy of this alleged petition with his filing, see Pet.'s Resp. Ex. 1 at 3 ("Defendant's Petition to the Single Justice II"), as well as a Motion for the Appointment of Counsel that he claims was filed with his petition, see id. Ex. 1 at 1.  The SJC docket does not indicate that this petition or the motion were ever filed.  See SJC Docket (Resp. to Mar. 22, 2013 Order App'x at 10, Docket No. 54-1).  However, even if they had been filed, they do not mention Mandeville's current federal claim regarding denial of counsel.  See Pet.'s Resp. Ex. 1 at 1.  As with Mandeville's 2002 motion for appointment of counsel, this motion cites only the Massachusetts Declaration of Rights and makes no claims under federal law.

Having examined all of Mandeville's filings to the SJC, the court concludes that Mandeville did not present the SJC with any claims under federal law resembling the second ground presented in his habeas petition.  Therefore, this ground remains unexhausted.

    2.   <u>Continuing the Stay Would Be an Abuse of Discretion and, In Any Event, is Unjustified</u>

As explained earlier, a stay of proceedings to permit a

petitioner to exhaust state remedies is not permissible if the petitioner has failed to show good cause for his failure to exhaust or if the "unexhausted claims are plainly meritless." <u>See</u> <u>DeLong</u>, 715 F.3d at 387 (quoting <u>Rhines</u>, 544 U.S. at 277) (internal quotation marks omitted). Under this standard, the continuance of this stay is unjustified. In any event, it is inappropriate. Therefore, the petition is being denied.

First, Mandeville has not shown good cause for his failure to satisfy the exhaustion requirement with respect to the second claim presented in his habeas petition. Instead, he has demonstrated a persistent misunderstanding of the exhaustion requirement, despite it being described in this court's dismissal of his first habeas petition, and his being provided a stay of more than six years in this case to exhaust his claims. Mandeville has argued that "the Petitioner is 'Not' required in a state court to present a 'Federal' claim, especially to the SJC." Pet.'s Resp. to Mot. to Dismiss at 12. This is not correct. <u>See</u> <u>Clements v. Maloney</u>, 485 F.3d 158, 162 (1st Cir. 2007) ("In order to exhaust a claim, the petitioner must 'present the federal claim fairly and recognizably' to the state courts . . . ." (quoting <u>Casella v. Clemons</u>, 207 F.3d 18, 20 (1st Cir. 2000)).

Second, Mandeville's unexhausted claim is "plainly meritless." As explained earlier, a defendant has no right to counsel under the federal constitution once state courts have

concluded direct appellate review of a conviction.  See Coleman, 501 U.S. at 756.  To the extent that Mandeville raises a claim under the Massachusetts Declaration of Rights, federal courts are not authorized to issue writs of habeas corpus based upon errors of state law.  See 28 U.S.C. §2254(a).

Continuing the stay in this case would "frustrate[] AEDPA's objective of encouraging finality by allowing [the] petition to delay the resolution of the federal proceedings."  Rhines, 544 U.S. at 277.  Accordingly, in accordance with the requests of both the petitioner and the respondent, the stay is being lifted. A district court, in the absence of a stay, is compelled to dismiss such a mixed petition.  See Rose, 455 U.S. at 510. Therefore, the petition is also being dismissed.

IV.  CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the court must "issue or deny a certificate of appealability [("COA")] when it enters a final order adverse to the applicant."  To receive a COA, Mandeville must make "a substantial showing of a denial of a constitutional right."  See 28 U.S.C. §2253(c)(3).  In other words, a petitioner must "show[] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  Slack v. McDaniel, 529 U.S.

26

473, 484 (2000) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)).  "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003).

As explained earlier, Mandeville has never presented his right-to-counsel claim, articulated under federal law, in state court.  Furthermore, Mandeville has expressly denied that he has any obligation to make such a presentation.  Given that this unexhausted claim is "clearly meritless" and that Mandeville has not shown good cause for his failure to exhaust, continuing the stay of proceedings would be an abuse of discretion.  <u>See</u> <u>DeLong</u>, 715 F.3d at 387 (citing <u>Rhines</u>, 544 U.S. at 277).  Furthermore, the continued inclusion of Mandeville's unexhausted claim mandates dismissal of his petition in its entirety.  <u>See</u> <u>Rose</u>, 455 U.S. at 510.

Under these circumstances, the court does not find that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  <u>Slack</u>, 529 U.S. at 484 (quoting <u>Barefoot</u>, 463 U.S. at 893).  Therefore, a COA is being denied for all claims.

V.   ORDER

Accordingly, it is hereby ORDERED that:

1.   Petitioner's Notice to Reopen Petition for a Writ of Habeas Corpus (Docket No. 49) is ALLOWED.

2.   Petitioner's Petition to Reopen Petition for a Writ of Habeas Corpus II (Docket No. 56) is DENIED as MOOT.

3.   Respondent's Motion for an Enlargement of Time Within Which to File Response (Docket No. 52) is ALLOWED.

4.   The Petition for a Writ of Habeas Corpus (Docket No. 2) is DENIED.

5.   A COA is DENIED for all claims.


                              /s/ Mark L. Wolf
                              UNITED STATES DISTRICT JUDGE